UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   v.<br><br>ASPHALT SPECIALISTS LLC,<br><br>                Defendant. | Case No. 23-cr-20700<br><br>Hon. Gershwin A. Drain |

**DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT OF
THE PARTIES' JOINT SENTENCING RECOMMENDATION**

Defendant Asphalt Specialists LLC ("ASI" or the "Company") submits this memorandum in advance of the sentencing scheduled for August 15, 2024. For the reasons set forth below, ASI submits that the sentence set forth in the plea agreement (Dkt. #15), which has been presented to the Court jointly by ASI and the government for consideration pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), is appropriate and in accordance with the requirements of 18 U.S.C. § 3553(a). ASI respectfully requests that the Court accept the plea agreement and impose a sentence consistent with its terms.

**I.      INTRODUCTION**

On January 30, 2024, ASI pled guilty pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) to two counts of participating in a conspiracy to violate the Sherman Antitrust Act, 15 U.S.C. § 1. (Plea Agreement ¶¶ 3-4.) ASI very much regrets and takes responsibility for this conduct.

Throughout this matter, the Company has endeavored to cooperate fully with the government's investigation and to transform its policies, processes, and controls both to ensure that the unlawful conduct not reoccur and to establish and maintain a compliance program that can be a model for others in its industry and beyond. After learning of the unlawful conduct, ASI promptly changed its senior management, removing and replacing its co-founders, and hired a new general counsel and chief compliance officer ("CCO") to overhaul the Company's compliance program, implement a new code of conduct, and oversee training of ASI employees. ASI has since implemented a robust antitrust compliance policy, revamped its training procedures to require additional compliance training—including antitrust-specific training—for its employees, and implemented a

comprehensive bid review process. Quite simply, the ASI before the Court today is not the same company it was at the time of the unlawful conduct.

For these reasons, and those set forth below, ASI respectfully submits that the jointly recommended fine in the plea agreement of $6.5 million, payable in six installments with accrued interest, and subject to potential offset pursuant to U.S.S.G. § 8C3.4 for any criminal fine imposed upon Dan Israel, Bruce Israel, or any other applicable individual for the same offense conduct as ASI, along with no term of probation, is an appropriate and just sentence and one that is sufficient but not greater than necessary to achieve the purposes set out under 18 U.S.C. § 3553(a).

## II.    BACKGROUND

### A. ASI

ASI is an asphalt paving company based in Pontiac, Michigan. (Presentence Report ("PSR"), Dkt. #22, ¶ 20.) Since its founding in 1987, ASI has grown to approximately 200 employees, although seasonal layoffs generally lead to about a 50% reduction in the workforce in winter. (*Id.* ¶ 26.) ASI's business currently makes up approximately 20% of Southeast Michigan's commercial paving market, and ASI is the only company that provides both paving and stabilization services in the state of Michigan. (*Id.* ¶ 20.) Apart from the current matter, ASI has no history of criminal violations or other misconduct. (*Id.* ¶¶ 17-18.)

### B. Factual Basis for the Offenses Charged

As set forth in the plea agreement, from March 2013 to November 2018, ASI engaged in a scheme with Al's Asphalt Paving Company, Inc. ("Al's") to rig bids for asphalt paving contracts in Michigan. (Plea Agreement ¶ 6.) From July 2017 to

3

May 2021, ASI also engaged in a scheme with F. Allied Construction Company, Inc. ("Allied") to rig bids for asphalt paving contracts in Michigan. During the relevant periods for each charge, ASI and its co-conspirators engaged in conversations and communications regarding which paving services contracts each company wanted to win, and agreed, during those conversations, to rig bids for asphalt paving services in each other's favor. (*Id.*) To effectuate the bid-rigging agreements, the agreed-upon winning co-conspirator provided the agreed-upon losing co-conspirator with the price it intended to bid, and the agreed-upon losing co-conspirator would use that information to craft and submit to the customer a higher-priced non-competitive bid. (*Id.*) The contracts at issue all related to projects that originated prior to October 31, 2020. (*Id.*)

During the relevant period, the volume of commerce attributable to ASI under U.S.S.G. §§ 1B1.3 and 2R1.1 associated with the provision of asphalt paving services affecting U.S. customers totaled at least $23,465,114. (*Id.*)

### C. Cooperation and Acceptance of Responsibility

ASI has "fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct." (PSR ¶ 51.) On numerous occasions, ASI has proffered relevant information to the government and made substantial efforts to identify and produce the most relevant materials in its possession. The Company also facilitated the cooperation of senior executives with essential information for the government's investigation.

Consistent with this substantial cooperation, as part of the plea agreement, ASI agreed to cooperate fully and truthfully with the government in the prosecution of this case, the current federal investigation of violations of federal antitrust and related

criminal laws involving the provision of asphalt paving services in the State of Michigan and elsewhere, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the government is a party. (Plea Agreement ¶ 15; *see also* PSR ¶ 16.)

### D. Remediation

In response to learning of the government's investigation and allegations, ASI quickly worked to change the Company's management and tone from the top. ASI's ultimate parent company created a special committee of its board to manage the Company's response to the allegations. Co-founder and former CEO Dan Israel was placed on a leave of absence beginning February 2022 and then terminated in June 2022. Co-founder Bruce Israel resigned from ASI in September 2022. (PSR ¶ 24.) In February 2022, ASI hired Keith McLean as its general counsel and CCO to overhaul ASI's compliance program, institute a "Speak Up" policy, implement a new code of conduct, oversee training of ASI employees, and investigate allegations of wrongdoing as necessary. (*Id.* ¶¶ 22, 28.) Mr. McLean, who has over 20 years of relevant experience, including in the public works and infrastructure industry, reports to the CEO and has direct access to ASI's board and the special committee.

ASI also launched several initiatives to enhance ASI's compliance program, with the assistance of outside counsel and a global third-party consulting firm experienced in improving corporate compliance programs. (*See id.* ¶ 31.) The resulting compliance program is designed to meet, and at times exceed, the Antitrust Division's criteria for an effective compliance program. *See infra*, Section IV.B.i.

In redesigning its compliance program, ASI revised its code of conduct to emphasize the importance of ethics and compliance to ASI's day-to-day business and highlight the resources available to address employee questions. (*Id.* ¶ 29.) The code of conduct outlines the overall responsibilities of all employees and the additional responsibilities supervisors have to create a culture of compliance with the law, the code of conduct, and all Company policies. (*Id.*) In addition to identifying prohibitions regarding several areas relevant to public procurement, the code of conduct includes a robust antitrust compliance policy that emphasizes the importance of fair competition and acting in accordance with antitrust laws. (*Id.* ¶ 30.) This policy explains that employees must be careful when dealing with competitors; explains prohibited conduct such as price fixing, bid rigging, and other actions that may restrict or reduce competition; and highlights antitrust "red flags" to be avoided and reported to the CCO. (*Id.*) The code of conduct also includes a "Speak Up" policy that encourages employees to report suspected misconduct confidentially and without fear of retaliation. (*Id.* ¶¶ 30, 32.)

ASI has provided office staff and field staff virtual training on the code of conduct and made the code available to employees electronically and in hard copy. (*See id.* ¶¶ 30-32.) ASI has adopted an annual review procedure for updating the code of conduct that involves the CCO and other ASI departments in any revisions, and involves senior management and the board in review and approval. ASI's revised employee handbook, updated in September 2023, reiterates the importance of ASI's code of conduct, its "Speak Up" policy, and compliance with ASI's antitrust compliance policy.

In June 2021, ASI also engaged outside counsel to train the Company's sales and estimating staff on how to avoid anticompetitive conduct. In September 2022, ASI

6

created specialized antitrust compliance training with the assistance of its consultant and outside counsel. (*Id.* ¶ 31.) The course educates employees about the importance of antitrust compliance, laws that promote fair competition, and situations that may create potential antitrust issues, and specifically covers price-fixing, market allocation, and bid rigging. All staff with bidding or pricing authority, staff that corresponds with customers and trade partners, board members, and the director of human resources have received this training. The CCO also meets with the sales teams several times a year for additional "burst" antitrust training to refresh employees on antitrust laws and help them to identify real-life situations that may lead to anticompetitive behavior. (*Id.*)

ASI also adopted new core values in March 2023 that emphasize acting with integrity and communicating about good and bad news. Compliance with these new core values was added as a factor considered in the employee review and compensation process in October 2023.

Finally, ASI has implemented a new process for reviewing bids. (*Id.*) Upon retention, the Company's consultant began conducting a review of all outgoing bids and assisted ASI in creating and implementing its bid review process, which Mr. McLean now oversees. Under this process, which applies to bids greater than $50,000, bids go through multiple levels of review. (*Id.*) *First*, the sales director establishes the bid file, which includes materials such as the bid invitation, subcontractor or supplier quotes, and correspondence with the customer, general contractor, suppliers, and other entities. *Second*, an estimator prepares a bid and meets with the applicable project manager for approval. *Third*, after approval, the estimator meets with the director of sales and project management to review the bid for accuracy and completeness. *Fourth*, the bid and signed

7

bid form are submitted to the CCO, whose review includes the use of construction estimating software to analyze the project file and bid. For bids over $1 million, the bid additionally is sent to a board member designated by the board for review and approval. (*Id.*)

### E. The Plea Agreement

Under the terms of the plea agreement, ASI agreed to: (i) plead guilty to the criminal information (Dkt. #1), (Plea Agreement ¶ 4); (ii) pay a criminal fine of $6.5 million, payable in six installments with accrued interest, subject to any potential offset that this Court may grant pursuant to U.S.S.G. § 8C3.4 as a result of any criminal fine imposed in the sentence of Dan Israel, Bruce Israel, or any other applicable individual for the same offense conduct as ASI, (*id.* ¶ 11); (iii) pay a $400 special assessment per count, (*id.*); and (iv) continue to cooperate with the Department of Justice on an ongoing basis, (*id.* ¶ 15). The Recommended Sentence (as defined in the plea agreement) recommends no order of restitution and that "no term of probation be imposed." (*Id.* ¶ 11.)

## III.   LEGAL STANDARD

Rule 11(c)(1)(C) authorizes the government to enter into plea agreements with defendants in which the parties agree that a particular sentence is the appropriate disposition of the case. *See* Fed R. Crim. P. 11(c)(1)(C). The Court, however, "retains absolute discretion whether to accept a plea agreement." Fed. R. Crim. P. 11, Advisory Committee notes to 1999 Amendments. As a plurality of the Supreme Court has observed:

> Federal sentencing law requires the district judge in every case to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of

> federal sentencing, in light of the Guidelines and other § 3553(a) factors. The Guidelines provide a framework or starting point—a basis, in the common sense meaning of the term—for the judge's exercise of discretion. Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but the agreement does not discharge the district court's independent obligation to exercise its discretion.

*Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion). In exercising that discretion, the district court may accept or reject the proposed Rule 11(c)(1)(C) plea agreement, but it may not modify the agreement's terms. *Id.*; *see also United States v. Cota-Luna*, 891 F.3d 639, 643 (6th Cir. 2018) ("[Rule 11(c)(1)(C)] authorizes plea agreements that, if accepted by the district court, specify the exact sentence the district court must enter.").

## IV. ARGUMENT

The factors set forth in 18 U.S.C. § 3553(a) support the determination that (i) the $6.5 million fine, payable in six installments with accrued interest and subject to offset under U.S.S.G. § 8C3.4, (ii) no term of probation, (iii) no restitution, and (iv) a $400 special assessment per count is a sentence sufficient but not greater than necessary to address the purposes of federal sentencing. (Plea Agreement ¶ 11.)

### A. The Parties' Jointly Recommended Sentence Falls Within the Applicable Sentencing Guidelines Range

In calculating the recommended fine, the government followed the Guidelines for determining penalties for antitrust offenses set out in U.S.S.G. § 2R.1, as set forth in the Presentence Report ¶¶ 41-44, including that "the defendant corporation fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct." As directed by U.S.S.G. § 2R1.1(d)(1), the government calculated the base fine as 20% of the $23,465,114 volume of commerce, or $4,693,022.80. (PSR ¶ 45.) The government then applied a multiplier of 1.20 to 2.40

9

based on ASI's culpability score, in accordance with U.S.S.G. § 8C2.6, yielding a Guidelines range of $5,631,627.36 to $11,263,254.72. (See *id.* ¶ 53.) The $6.5 million agreed-upon fine for ASI falls within that properly calculated range. (*See id.*)

The government concluded that the Recommended Sentence "is reasonable" and that "there exists no aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines." (Plea Agreement ¶ 11.) The Probation Officer "has not identified any factors that would warrant a departure from the applicable sentencing guideline range." (PSR ¶ 64.)

### B. The Section 3553(a) Factors Support the Recommended Sentence

#### i. The Nature and Circumstances of the Offense and the History and Characteristics of ASI

The nature and circumstances of the offense are discussed in detail above, and in the factual statements in the plea agreement, the criminal information, and the Presentence Report. (Plea Agreement ¶ 6; Criminal Information ¶¶ 8-9; PSR ¶¶ 6-12.) ASI recognizes that the offense conduct at issue in this case is serious and regrets its conduct.

ASI has no prior criminal history. (*See* PSR ¶¶ 17-19.) As described above, *see supra* at Section II.D, ASI has taken significant steps to prevent recurrence of an offense. In response to learning of the government's investigation and allegations, former CEO Dan Israel was placed on a leave of absence beginning February 2022, then terminated in June 2022, and Bruce Israel resigned from ASI in September 2022. (PSR ¶ 24.) In February 2022, ASI also hired Keith McLean as its general counsel and CCO. (PSR ¶ 22.)

10

Furthermore, ASI's innovative compliance program meets, and in ways exceeds, the Antitrust Division's criteria for evaluating the hallmarks of an effective compliance program:

> The factors that Division prosecutors should consider when evaluating the effectiveness of an antitrust compliance program include: (1) the design and comprehensiveness of the program; (2) the culture of compliance within the company; (3) responsibility for, and resources dedicated to, antitrust compliance; (4) antitrust risk assessment techniques; (5) compliance training and communication to employees; (6) monitoring and auditing techniques, including continued review, evaluation, and revision of the antitrust compliance program; (7) reporting mechanisms; (8) compliance incentives and discipline; and (9) remediation methods.

*See* U.S. Dep't of Justice, Antitrust Div., *Evaluation of Corporate Compliance Programs* (July 2019), at 3-4 (citing 7 See JM § 9-28.800; CRIMINAL DIVISION COMPLIANCE GUIDANCE; INTERNATIONAL CHAMBER OF COMMERCE, THE ICC ANTITRUST COMPLIANCE TOOLKIT 2 (2013), *available at* https://cdn.iccwbo.org/content/uploads/sites/3/2013/04/ICC-by Antitrust-Compliance-ToolkitENGLISH.pdf).  The substantial resources ASI has invested and continues to invest in these efforts warrant consideration in sentencing.

### ii. The Purpose of Sentencing

ASI submits that the proposed sentence also serves the purposes outlined in 18 U.S.C. §§ 3553(a)(2)(A)–(a)(2)(C).

*First*, the financial penalty is substantial.  If the plea agreement is accepted, ASI will be required to pay a fine totaling $6.5 million, payable in six installments with accrued interest, subject to any potential offset that this Court may grant pursuant to U.S.S.G. § 8C3.4 as a result of any criminal fine imposed in the sentence of Dan Israel, Bruce Israel, or any other applicable individual for the same offense conduct as ASI.

(Plea Agreement ¶ 11.) That amount is significant for the Company. (*See* PSR ¶¶ 24, 33.)

*Second*, in connection with the plea agreement, ASI has pled guilty and accepted responsibility for its serious conduct. ASI has had to weather the public ramifications of its guilty plea and the underlying conduct. For example, ASI's construction prequalification has been temporarily suspended with the Michigan Department of Transportation and ASI received a temporary nonprocurement suspension from the U.S. Department of Transportation. Moreover, ASI has suffered reputational harm through public reporting about its conduct and this case.

*Third*, ASI has cooperated extensively with the government's investigation, both before and after it entered the plea agreement. *See supra* at Section II.C. (Plea Agreement ¶ 15; PSR ¶ 51.) ASI's prior record of, and ongoing commitment to, cooperation should be considered in assessing whether the proposed penalty serves the purposes of sentencing outlined in § 3553(a)(2).

The Recommended Sentence also will serve the goals of promoting respect for the law and providing for just punishment and general deterrence. The sentence serves the goal of specific deterrence, as evident from the compliance enhancements ASI has already undertaken in response to the investigation and allegations. *See supra* at Section II.D.

### iii. The Kinds of Sentences Available

As set forth in the Presentence Report ¶¶ 56-62, the three available sentencing options are: (i) fines; (ii) restitution; and (iii) probation. *First*, under the plea agreement, ASI has agreed to pay a substantial criminal fine totaling $6.5 million. (Plea Agreement

¶ 11.) *Second*, while Section 3553(a)(7) instructs the Court to consider "the need to provide restitution to any victims of the offense" in crafting an appropriate sentence, restitution here is discretionary, not mandatory, and only available where the parties to the plea agreement have agreed that restitution may be ordered or where the court chooses to impose restitution as a condition of probation. 18 U.S.C. § 3663(a)(3); 18 U.S.C. § 3563(b)(2). Here the parties have agreed not to recommend that the Court impose an order of restitution. (Plea Agreement ¶ 11.) *Third*, the parties have agreed not to recommend probation. (*Id.*) A term of probation is particularly unnecessary given the controls ASI has put in place, and which it began implementing as early as June 2021, as part of its remediation in response to the government's investigation and allegations. *See supra* at Section II.D.

### iv. Avoidance of Unwanted Disparities

The proposed sentence does not create unwarranted disparities with those of ASI's co-conspirators. The Recommend Sentence for ASI of $6.5 million reflects a 1.39 multiple on 20% of the volume of commerce. In comparison, the proposed sentence for Allied is a $733,940 fine for two counts involving a $3,058,084.16 volume of commerce, which reflects a 1.20 multiple on 20% of the volume of commerce, payable in six installments with accrued interest, and subject to a potential offset under U.S.S.G. § 8C3.4. *See* Plea Agreement ¶ 11, *United States of America v. F. Allied Constr. Co., Inc.*, No. 23-cr-20381 (E.D. Mich., Aug. 29, 2023). As in this case, in the *Allied* plea agreement, the government agreed to recommend no term of probation and no restitution. *Id.* The imposed sentence for Al's is similar: an $822,992 fine for two counts involving a $3,657,748 volume of commerce, reflecting a 1.12 multiple on 20% of the volume of

13

commerce, payable in six installments with accrued interest, offset by $36,577.48 under U.S.S.G. § 8C3.4. *See* Sentence Transcript at 21:11-25, 25:15-26:3, 27:15-20, *United States of America v. Al's Asphalt Paving Co., Inc.*, No. 23-cr-20699 (E.D. Mich., Aug. 2, 2024). The Court imposed no term of probation and no restitution. *Id.* at 21:11-15; *see* Judgment in a Criminal Case, *United States of America v. Al's Asphalt Paving Co., Inc.*, No. 23-cr-20699 (E.D. Mich., July 31, 2024).

## V. CONCLUSION

For the foregoing reasons, ASI respectfully requests the Court accept the joint recommendation of the government and ASI, and impose as an appropriate sentence here a $6.5 million fine, payable in six installments with accrued interest, subject to any potential offset that this Court may grant pursuant to U.S.S.G. § 8C3.4 as a result of any criminal fine imposed in the sentence of Dan Israel, Bruce Israel, or any other applicable individual for the same offense conduct as ASI, no term of probation, no restitution, and a $400 special assessment per count upon conviction. (Plea Agreement ¶ 11.) Finally, ASI notes that the sentencings for Dan and Bruce Israel have been reset for September of this year, and the Company intends to return to the Court after those sentencings to seek any permissible offsets under U.S.S.G. § 8C3.4.

Dated:   August 8, 2024                    Respectfully submitted,

                                        DAVIS POLK & WARDWELL LLP

                                      By:   */s/Paul Nathanson*
                                              Paul Nathanson

                                      901 15th St NW
                                      Washington, DC 20005
                                      (202) 962-7000

                                      MOGILL & LEMANSKI, PLLC

                                      By:   */s/Kenneth M. Mogill*
                                              Kenneth M. Mogill     P17865

                                      27 E. Flint Street
                                      Lake Orion, Michigan 48362
                                      (248) 814-9470

                                      *Attorneys for Defendant*
                                      *Asphalt Specialists LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

DAVIS POLK & WARDWELL LLP

*/s/Paul Nathanson*
Paul Nathanson
901 15th St NW
Washington, DC 20005
(202) 962-7000

Dated: August 8, 2024