UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 2:23-cr-20700 |
| v. | Hon. Gershwin A. Drain |
| ASPHALT SPECIALISTS LLC | |
| Defendant. | |

**UNITED STATES' SENTENCING MEMORANDUM FOR
ASPHALT SPECIALISTS LLC**

Defendant Asphalt Specialists LLC (the "Defendant" or "ASI") won more than $23.4 million in asphalt paving services contracts by participating in extensive bid-rigging conspiracies that affected dozens of projects and victims. The Defendant, through its officers and employees, corrupted the competitive bidding process and undermined the basic, but essential, notions of free and fair competition. The Defendant's actions violated the Sherman Act, 15 U.S.C. § 1, and it has pleaded guilty under a Rule 11(c)(1)(C) agreement. In accordance with that agreement, the United States recommends that the Court sentence the Defendant to a criminal fine of $6.5 million, payable in installments and subject to any potential fine offset that the Court may grant under U.S.S.G. §8C3.4, a $400 special assessment for each count of conviction, no term of probation, and no order of restitution. For the reasons set forth in this sentencing memo, the United States submits that this sentence is

sufficient, but not greater than necessary, to achieve the sentencing goals of 18 U.S.C. § 3553(a).

I.   **Offense Background**

The Defendant is an asphalt paving company based in Pontiac, Michigan. During the relevant periods of the conspiracies, the Defendant provided a range of asphalt paving services, such as large driveways, parking lots, and private roadways. Potential customers would solicit bids from providers of asphalt paving services such as the Defendant, typically requiring bids from at least two or more providers. The potential customer would award contracts for asphalt paving services after first reviewing and evaluating bids submitted by the providers.

From at least as early as March 2013 and continuing until at least as late as November 2018, the Defendant, through its officers and employees, including individuals within high-level personnel of the organization such as co-conspirators Daniel L. Israel[1] and Bruce F. Israel,[2] conspired with Al's Asphalt Paving Company, Inc. ("Al's Asphalt") and other co-conspirators to rig bids for contracts to provide

---

[1] Daniel L. Israel, former President and part-owner of ASI, pleaded guilty to one count of violating Section 1 of the Sherman Act (15 U.S.C. § 1) on October 30, 2023, and is awaiting sentencing. See United States v. Daniel L. Israel, 2:23-CR-20538.

[2] Bruce F. Israel, former Vice President and part-owner of ASI, pleaded guilty to two counts of violating Section 1 of the Sherman Act (15 U.S.C. § 1) on January 11, 2024, and is awaiting sentencing. See United States v. Bruce F. Israel, 2:23-CR-20644.

asphalt paving services in the State of Michigan. In addition, from at least as early as July 2017 and continuing until at least as late as May 2021, the Defendant, through its officers and employees, including individuals within high-level personnel of the organization such as co-conspirator Bruce Israel, conspired with F. Allied Construction Company, Inc. ("Allied") and other co-conspirators to rig bids for contracts to provide asphalt paving services in the State of Michigan. The Defendant has pleaded guilty to its participation in both conspiracies. Plea Agreement, Dkt. 15.

The two conspiracies operated in much the same way. In furtherance of the respective conspiracies, the Defendant's officers and employees engaged in conversations and communications with Al's Asphalt and Allied co-conspirators about which contracts each company wanted to win and agreed to rig bids in each other's favor. The co-conspirators shared price-related information, including bid submissions, so that the agreed-upon losing co-conspirator could craft a higher-priced non-competitive bid, which it then submitted to the customer. As a result, the agreed-upon winning company would indeed get the contract. The Defendant, Al's Asphalt, and Allied each provided and accepted payments for asphalt paving services under contracts obtained through this collusive and non-competitive process.

The Defendant was paid $10,187,978 for projects that it rigged with Al's Asphalt, $3,773,723 for projects that it rigged with Allied, and $317,340 for projects it rigged with both Al's Asphalt and Allied. The Defendant also engaged in additional, uncharged big rigging agreements, and was paid $9,186,073 for projects affected by that conduct. The payments derived from those uncharged bid rigging agreements are nonetheless attributable to the Defendant under U.S.S.G §1B1.3 as relevant conduct. All together, the total stipulated volume of commerce affected by the Defendant's conduct is $23,465,114. See Plea Agreement ¶ 6(c).

The victims in this matter are customers that paid the Defendant and its co-conspirators for asphalt paving services projects that were awarded via rigged bids in furtherance of the above-described conspiracies. The United States has identified 40 such organizational victims.

## II. Sentencing Guidelines Calculations and Fine Methodology

In determining and imposing a sentence, the Court must consider the sentence established by the advisory Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). The Sentencing Guidelines procedure for calculating the Guidelines fine range for a corporation charged with an antitrust offense is set forth below. Organizations, such as the Defendant, are sentenced pursuant to Chapter 8 of the Sentencing Guidelines. In the case of antitrust violations, in addition to the provisions of Chapter 8, special

instructions with respect to determining fines for organizations are found in the Antitrust Guideline, U.S.S.G. §2R1.1.

### A. Determining the Base Fine

Under the Sentencing Guidelines, the first step in determining the Defendant's fine range is to determine the base fine. The controlling guideline applicable to the counts charged is U.S.S.G. §2R1.1(d)(1), which provides that the base fine is 20% of the affected volume of commerce.

Counts One and Two are grouped under U.S.S.G. §3D1.2(d). Additionally, when multiple counts or conspiracies are involved, the volume of commerce should be treated cumulatively to determine a single, combined offense level. U.S.S.G. §2R1.1(b)(2).

The volume of commerce attributable to a defendant for sentencing purposes in an antitrust case is the volume of commerce "done by him or his principal in goods or services that were affected by the violation." U.S.S.G. §2R1.1(b)(2). As noted above, the parties have stipulated that the volume of commerce attributable to the Defendant under U.S.S.G. §§2R1.1 and 1B1.3 is $23,465,114. Plea Agreement ¶ 6(c). The stipulated volume of commerce reflects payments made to the Defendant for work performed on rigged contracts to provide asphalt paving services in furtherance of the charged and uncharged conduct. Under U.S.S.G. §2R1.1(d)(1), the base fine is 20% of $23,465,114, or $4,693,022.80.

## B. Sentencing Guidelines Range

After determining the base fine, the next step is to determine the Defendant's culpability score. The Defendant's base culpability score is 5. U.S.S.G. §8C2.5(a). The culpability score is increased by 3 points because the Defendant had more than 200 employees and an individual within high-level personnel of the organization participated in the conspiracies. U.S.S.G. §8C2.5(b)(3). The Defendant cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct, which adjusts the culpability score downward by 2 points. U.S.S.G. §8C2.5(g)(2). The resulting total culpability score is 6, which corresponds to a minimum multiplier of 1.2 and a maximum multiplier of 2.4. U.S.S.G. §8C2.6. Applying the multipliers to the base fine of $4,693,022.80 yields a Guidelines fine range of $5,631,627.36 to $11,263,254.72. U.S.S.G. §8C2.7.

The calculations described above are summarized in the following chart:

| Description | U.S.S.G. § | Calculation |
|---|---|---|
| Volume of Commerce | 2R1.1(b)(2) | $23,465,114 (stipulated) |
| Base Fine | 8C2.4(a), (b) applying 2R1.1(d)(1) | $4,693,022.80 |
| Base Culpability Score | 8C2.5(a) | 5 |
| 200 or more employees and the involvement of high-level personnel of the organization | 8C2.5(b)(3) | +3 |
| Cooperation in the Investigation and Clear Acceptance of Responsibility | 8C2.5(g)(2) | -2 |
| Total Culpability Score | | 6 |
| Multipliers | 8C2.6 | 1.2 – 2.4 |
| Corporate Guidelines Fine Range, applying Multipliers to Base Fine | 8C2.7 | $5,631,627.36 to $11,263,254.72 |

### III. Recommended Sentence

Per the terms of the Rule 11(c)(1)(C) plea agreement entered into by the parties and accepted by this Court on January 30, 2024, the United States and the Defendant jointly agreed to recommend that the Court sentence the Defendant to pay a criminal fine of $6.5 million, payable in installments[3] and subject to any potential

---

[3] The parties have agreed to recommend that the fine be paid in the following installments: within 30 days of imposition of sentence -- $1,083,333.33 (plus any accrued interest); at the one-year anniversary of imposition of sentence ("anniversary") -- $1,083,333.33 (plus any accrued interest); at the two-year anniversary -- $1,083,333.33 (plus any accrued interest); at the three-year anniversary -- $1,083,333.33 (plus any accrued interest); at the four-year anniversary-- $1,083,333.33 (plus any accrued interest); and at the five-year anniversary -- $1,083,333.35 (plus any accrued interest); provided, however, that the Defendant will have the option at any time before the five-year anniversary of

fine offset under U.S.S.G. §8C3.4, no term of probation,[4] and no order of restitution. Plea Agreement ¶ 11.

The United States submits that the recommended sentence is sufficient but not greater than necessary to meet the stated sentencing goals and factors set forth in 18 U.S.C. § 3553(a).

### A. The Recommended Sentence Satisfies 18 U.S.C. § 3553(a)

In addition to considering the Guidelines, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a) in determining and imposing a sentence that is "sufficient but not greater than necessary" to meet specified sentencing goals. Because the Defendant in this case is a corporation, not all the § 3353(a) factors apply. The most relevant factors in this inquiry include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide adequate deterrence, see 18 U.S.C. § 3553(a)(2)(A)–(B), and the nature and circumstances of the offense and the history and characteristics of the Defendant, id. § 3553(a)(1). The recommended sentence is sufficient, but not greater than necessary, to achieve these objectives.

---

prepaying the remaining balance (plus any accrued interest) then owing on the fine. Plea Agreement, ¶¶ 11, 11(a) (Dkt. 15).

[4] The Defendant understands that the Court's denial of the request for no term of probation will not void the Plea Agreement. Plea Agreement ¶ 11(c).

### i. The recommended sentence recognizes the seriousness of the offense and promotes respect for the law

The Defendant's violations of the Sherman Act are serious because they attacked the basic principle of competition integral to our economic system. Bid rigging is "both an unreasonable restraint of trade and a *per se* violation of the Sherman Act." See United States v. Dynalectric Co., 861 F.2d 722 (6th Cir. 1988) ("[A]greements whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality—they are 'illegal *per se*.'); see also id. (quoting Northern Pacific Railway v. United States, 356 U.S. 1 (1958) ("However, there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.").

Further, as the Sentencing Commission recognizes, "there is near universal agreement that restrictive agreements among competitors, such as horizontal price-fixing (including bid-rigging) and horizontal market-allocation, can cause serious economic harm." U.S.S.G. §2R1.1 cmt. background. The Defendant's bid-rigging conspiracies are no exception. The Defendant and its co-conspirators tainted dozens of asphalt paving services contracts, robbing its customers of the benefit of free competition, a basic principle that is integral to our economic system. The

Defendant and its co-conspirators reaped the benefits of their conspiracies to the tune of millions of dollars paid on rigged contracts: the Defendant won over $23.4 million in rigged contracts while helping Al's Asphalt and Allied win rigged contracts worth over $2.3 million combined.

In addition, the Defendant participated in the conspiracies mostly through its high-level executives, including co-conspirators Bruce and Daniel Israel, who were integrally involved in the misconduct. Bruce Israel personally sought and received numerous non-competitive bids with the Defendant's Al's Asphalt and Allied co-conspirators, and Daniel Israel did the same with co-conspirator Al's Asphalt. The Israels also participated in meetings with co-conspirator executives in which non-competitive bidding was discussed. Their mere involvement in the conspiracies clearly signaled to the Defendant's co-conspirators, as well as its own employees, that the Defendant was committed to the criminal conspiracies from the top-down. A significant criminal fine, as included in the recommended sentence, is necessary to reflect the seriousness of the Defendant's offense.

The recommended sentence also promotes respect for the law. Competitive bidding processes, such as the kind that takes place in the asphalt paving industry, rely on competitors to bid honestly and independently. The recommended sentence underscores the importance of keeping this competitive process collusion-free. Further, the recommended sentence serves as a reminder of corporations' immense

responsibility to abide by the Sherman Act to ensure that customers can reap the benefits of fair and free competition in the marketplace.

Accordingly, the United States' recommended sentence properly accounts for the seriousness of the Defendant's conduct and promotes respect for the law.

### ii. The recommended sentence provides both specific and general deterrence

The recommended sentence will provide adequate specific and general deterrence. The Defendant remains an asphalt paving services provider, as do its employees, including employees who participated in or were aware of the instant offenses. They may again find themselves in situations like those that gave rise to the instant offenses, including receiving requests to submit or seek non-competitive bids. A significant criminal fine is necessary to ensure that they are put on notice that antitrust violations are taken seriously. Although the Defendant has taken steps to establish and enhance corporate compliance, the recommended sentence will further incentivize the Defendant to maintain a culture of compliance and remain vigilant against threats to free and fair competition in the asphalt paving industry. The recommended sentence thus provides specific deterrence.

The recommended sentence also supports general deterrence. "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general

deterrence." United States v. Peppel, 707 F.3d 627, 637 (6th Cir. 2013) (quoting United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006)). Antitrust defendants frequently participate in antitrust conspiracies calculated to boost profits, take shortcuts, and subvert free and open competition. To the average corporate antitrust defendant, an insufficient penalty for violating the Sherman Act can be seen as merely the cost of doing business. A significant fine is necessary to deter and defeat this perverse cost-benefit analysis, as it shows would-be antitrust violators that the risks of committing antitrust offenses are not worth any potential benefit.

Moreover, this type of general deterrence is especially important here because bid-rigging is a particularly difficult crime to detect. Illegal conduct that enriches offenders while minimizing the risk of detection is especially pernicious and requires strong sentences to deter it. See United States v. Zukerman, 897 F.3d 423, 429 (2d Cir. 2018) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it" (internal citation omitted)). Given the immense effort that it takes to discover and prosecute bid-riggers like the Defendant, an insufficient penalty may embolden would-be offenders, undermining general deterrence.

A significant criminal fine furthers deterrence. Here, the need for adequate specific and general deterrence weighs in favor of imposing the United States' recommended sentence.

### iii. The recommended sentence appropriately reflects the history and characteristics of the Defendant and the nature and circumstances of the offense

The Defendant had not been charged with any federal crime prior to the instant offenses. Based on the information about its current financial condition submitted by the Defendant to Probation, it appears that it has the ability to pay the recommended fine. See PSR ¶ 38.

The Defendant was founded in 1987 and since that time has positioned itself as a well-known player in the asphalt paving industry. Despite its industry presence, the Defendant chose to cross the line and corrupt the competitive landscape in violation of the Sherman Act. It received and provided non-competitive bids as part of separate bid-rigging conspiracies spanning many years and affecting numerous victims. As a result, the Defendant itself was paid tens of millions of dollars on tainted contracts, in addition to the millions paid to Defendant's co-conspirator companies.

The Defendant has accepted responsibility for its conduct, and it cooperated in the United States' investigation into the asphalt paving industry. The Defendant's

personal history and characteristics, as well as the nature and circumstances of the offense, support the United States' recommended sentence.

### iv. Balancing the relevant factors, the recommended sentence is sufficient but not greater than necessary to achieve sentencing objectives

The Defendant's illegal conduct was extensive and corrupted the competitive process for many years. Accordingly, its sentence must appropriately address the sentencing objectives of § 3553(a). The United States submits that its recommended sentence of a criminal fine of $6.5 million, subject to any potential fine offset that the Court may grant under U.S.S.G. §8C3.4, a $400 special assessment for each count of conviction, no term of probation, and no order of restitution is sufficient but not greater than necessary to achieve those objectives.

## IV. Restitution is Discretionary

The parties have agreed to recommend that the Defendant's sentence not include a restitution order. Plea Agreement, ¶ 11. The Mandatory Victim Restitution Act does not mandate restitution for Title 15 offenses, including the Sherman Act, but only for crimes of violence and certain offenses under Titles 18 and 21. 18 U.S.C. § 3663A(c)(1)(A). See PSR ¶ 57. Under the Crime Victims' Rights Act, 18 U.S.C. § 3771, the United States has notified the Defendant's victims of these proceedings.

## V. Probation

The parties have agreed to recommend that no term of probation be imposed. Plea Agreement ¶ 11(c). Under 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years. In considering whether to impose probation, the Court should consider the factors set forth in U.S.S.G. §8D1.1, which include ordering a term of probation to secure payment of a fine, §8D1.1(a)(2), or to ensure implementation of an effective compliance program, §8D1.1(a)(3). As previously noted, the Defendant's financial condition appears to be in a position to support its payment of a criminal fine. PSR ¶ 38. The Defendant also reported that it already has implemented a company-wide compliance program. PSR ¶¶ 28-32. Accordingly, the United States does not recommend a term of probation.

## VI. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court: 1) order the Defendant to pay in installments a $6.5 million criminal fine subject to any potential fine offset that the Court may grant under U.S.S.G. §8C3.4; 2) order the Defendant to pay a $400 special assessment for each count of conviction; 3) not impose a term of probation; and 4) not order restitution.

      Respectfully submitted,

      */s/ Melanie G. Wegner*

      Melanie G. Wegner (IL 6324826)
      Ruben Martinez, Jr. (TX 24052278)
      Allison M. Gorsuch (IL 6329734)
      Trial Attorneys

      Michael N. Loterstein (IL 6297060)
      Assistant Chief

      U.S. Department of Justice
      Antitrust Division
      209 S. LaSalle St. Suite 600
      Chicago, Illinois
      Tel: 312-984-7200

Dated: August 8, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Melanie G. Wegner*
Melanie G. Wegner, IL 6324826
Trial Attorney
U.S. Dept. of Justice,
Antitrust Division
Chicago Office
209 S. LaSalle, Suite 600
Chicago, IL 60604
202-894-4250
Melanie.Wegner@usdoj.gov

Dated: August 8, 2024